**NO. 26-30109**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

---

Tonya Mann, on behalf of her minor children, K.M. and A.M., also known as Tonya Mann-Oliver,

Plaintiff-Appellee

v.

Daniel Haugen, individually & in his official capacity; Richard Pollitt, individually & in his official capacity; Gregory Russell, individually & in his official capacity; Matthew Boyd, individually & in his official capacity; Marcus Green, individually & in his official capacity,

Defendants-Appellants

---

On Appeal from the United States District Court for the
Western District of Louisiana, Docket No. 5:24-CV-0318-JE-MLH

---

Brief of Appellants, Daniel Haugen, Richard Pollitt, Gregory Russell, Matthew Boyd, and Marcus Green

---

Submitted by:

WIENER WEISS & MADISON APC

Layne A. Clark, Jr. (LA Bar #23686)
Reid A. Jones (LA Bar #34611)
330 Marshall St., Suite 1000
Shreveport, LA 71101
Telephone: (318) 226-9100
Email: lclark@wwmlaw.com
Email: rjones@wwmlaw.com

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities, as described in the fourth sentence of 5th Cir. R. 28.2.1, have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| **Appellee:** | **Counsel for Appellee:** |
|---|---|
| Tonya Mann, also known as Tonya Mann-Oliver | Christopher J. Murell of Murell Law Firm<br>New Orleans, LA<br><br>Ramon A. Soto of Soto Law Office<br>Albuquerque, NM<br><br>Taylor E. Smith of Smith & Marjanovic Law<br>Albuquerque, NM |

| **Appellants:** | **Counsel for Appellants:** |
|---|---|
| Daniel Haugen, Richard Pollitt, Gregory Russell, Matthew Boyd, and Marcus Green | Layne A. Clark, Jr. and Reid A. Jones of Wiener, Weiss & Madison<br><br>Shreveport, LA |

/s/ *Reid A. Jones*
Reid A. Jones
Attorney of record for Appellants,
Daniel Haugen, Richard Pollitt,
Gregory Russell, Matthew Boyd,
and Marcus Green

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Federal Rule of Appellate Procedure 34(a)(1) and Fifth Circuit Rule 28.2.3, Appellants Bossier City Police Chief Daniel Haugen and Bossier City Police Officers Richard Pollitt, Gregory Russell, Matthew Boyd, and Marcus Green (sometimes collectively "Appellants") respectfully request oral argument. This appeal presents important and recurring questions concerning the proper application of qualified immunity in evolving encounters, including the extent to which courts may segment an ongoing confrontation and the level of factual specificity required to overcome qualified immunity at the pleading stage. Because the appeal also implicates recent Supreme Court guidance concerning the totality-of-the-circumstances analysis and the "clearly established" standard, Appellants suggest that oral argument would materially assist the Court's decisional process.

# TABLE OF CONTENTS


Certificate of Interested Persons ....................................................................i

Statement Regarding Oral Argument ................................................................ iii

Table of Contents ..............................................................................................iv

Table of Authorities ...........................................................................................v

Jurisdictional Statement ....................................................................................1

Statement of Issues Presented for Review ........................................................2

Statement of the Case .........................................................................................3

A. Introduction ..................................................................................................3

B. The Incident ..................................................................................................4

C. Proceedings Below ........................................................................................8

1. Amended Complaint allegations.....................................................9

2. Renewed Motion to Dismiss and ruling..........................................10

Summary of Argument .......................................................................................12

Argument ............................................................................................................13

A. Standard of Review .......................................................................................13

B. Mann Didn't Plead Objectively Unreasonable Force.......................................13

1. First *Graham* factor: Mattingly's crimes were serious.................14

2. Second and third *Graham* factors: The complaint never plausibly alleges that officers perceived the threat had ended..........15

a. "Incapacitated" is a conclusory label…………………………15

b. Nothing signaled that the danger had passed…………………17

3. The failure-to-intervene claim fails without excessive force………...19

C. The District Court Improperly "Bifurcated" a Single, Continuous Encounter…………………………………………………………………19

D. No Clearly Established Law Prohibited the Bossier City Officers' Conduct…………………………………………………………………..…23

1. *Roque v. Harvel* is materially distinguishable…………………..…23

2. *Zorn v. Linton* and *Estevis v. Cantu* confirm the error below………..25

E. This Court Should Exercise Pendant Appellate Jurisdiction to Dismiss Mann's State-Law Claims……………………………………..…27

Conclusion .........................................................................................................29

Certificate of Service .........................................................................................30

Certificate of Compliance with Fed. R. App. 32(a) .............................................30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. al-Kidd*,
563 U.S. 731, 131 S. Ct. 2074 (2011) ........ 22, 23

*Backe v. LeBlanc*,
691 F.3d 645 (5th Cir. 2012) ........ 13

*Bailey v. Ramos*,
125 F.4th 667 (5th Cir. 2025) ........ 14

*Baker v. Coborn*,
170 F.4th 988 (5th Cir. 2026) ........ 21

*Baker v. Coborn*,
68 F.4th 240 (5th Cir. 2023) ........ 22

*Barnes v. Felix*,
605 U.S. 73 (2025) ........ 4, 19, 21

*Benfield v. Magee*,
945 F.3d 333 (5th Cir. 2019) ........ 13

*Carswell v. Camp*,
54 F.4th 307 (5th Cir. 2022) ........ 1

*Carter v. Dupuy*,
173 F.4th 561 (5th Cir. 2026) ........ 27

*County of Los Angeles, Calif. v. Mendez*,
581 U.S. 420 (2017) ........ 19

*Deville v. Marcantel*,
567 F.3d 156 (5th Cir. 2009) ........ 14, 28

*Doe v. Ferguson*,
128 F.4th 727 (5th Cir. 2025) ........ 13

*Edmiston v. Borrego*,
75 F.4th 551 (5th Cir. 2023) ........................................................................ 13

*Estevis v. Cantu*,
134 F.4th 793 (5th Cir. 2025) ...................................................................... 26

*Garza v. Briones*,
943 F.3d 740 (5th Cir. 2019)........................................................... 17, 18

*Graham v. Connor*,
490 U.S. 386 (1989)........................................................... 14, 15, 17, 18

*Harmon v. City of Arlington, Texas*,
16 F.4th 1159 (5th Cir. 2021) ...................................................................... 16

*Harper v. Virginia Dep't of Tax'n*,
509 U.S. 86 (1993)....................................................................................... 20

*Henderson v. Harris Cnty., Texas*,
51 F.4th 125 (5th Cir. 2022) ........................................................................ 23

*Hudspeth v. City of Shreveport*,
270 F. App'x 332 (5th Cir. 2008) ................................................................ 18

*King v. Handorf*,
821 F.3d 650 (5th Cir. 2016)......................................................................... 27

*LaVergne v. Stutes*,
82 F.4th 433 (5th Cir. 2023) ........................................................................ 13

*Lytle v. Bexar County*,
560 F.3d 404 (5th Cir. 2009)........................................................... 21, 26

*Manis v. Lawson*,
585 F.3d 839 (5th Cir. 2009)......................................................................... 18

*Mathieu v. Imperial Toy Corp.*,
94-0952 (La. 11/30/94), 646 So. 2d 318 ........................................................ 28

*McKay v. LaCroix*,
117 F.4th 741 (5th Cir. 2024) ........................................................................ 1

*Mitchell v. Forsyth*,
472 U.S. 511 (1985) .................................................................................. 1

*Morin v. Caire*,
77 F.3d 116 (5th Cir. 1996)...................................................................... 1, 27

*Morgan v. Swanson,*
659 F.3d 359 (5th Cir. 2011)......................................................................... 23

*Morrow v. Meachum*,
917 F.3d 870 (5th Cir. 2019)......................................................................... 23

*Pearson v. Callahan*,
555 U.S. 223 (2009) ............................................................................... 1, 13

*Pena v. City of Rio Grande City*,
879 F.3d 613 (5th Cir. 2018)......................................................................... 14

*Pension Benefit Guar. Corp. v. White Consolidated Indus.*,
998 F.2d 1192 (3d Cir.1993)........................................................................... 7

*Plumhoff v. Rickard*,
572 U.S. 765 (2014) ..................................................................................... 17

*Reese v. Anderson*,
926 F.2d 494 (5th Cir. 1991)......................................................................... 17

*Roque v. Harvel*,
993 F.3d 325 (5th Cir. 2021)............................................................... 23, 24, 26

*Rucker v. Marshall*,
119 F.4th 395 (5th Cir. 2024) ....................................................................... 14

*Salazar v. Molina*,
37 F.4th 278 (5th Cir. 2022) ......................................................................... 15

*Salve Regina College v. Russell*,
499 U.S. 225 (1991) ........................................ 13

*Scarborough v. Clemco Indus.*,
391 F.3d 660 (5th Cir. 2004) ........................................ 13

*Williams v. Travelers Ins. Co.*,
99 F.3d 1135 (5th Cir. 1996) ........................................ 7

*Zorn v. Linton*,
607 U.S.___, 146 S. Ct. 926 (2026) ........................................ 25, 26

**Statutes**

28 U.S.C. § 1367 ........................................ 1

28 U.S.C. § 1331 ........................................ 1

28 U.S.C. § 1343 ........................................ 1

42 U.S.C. § 1983 ........................................ 1

La. Rev. Stat. 14:35.3 ........................................ 15

## JURISDICTIONAL STATEMENT

The district court had subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3) because Plaintiff, Tonya Mann ("Mann"), asserted claims under 42 U.S.C. § 1983 alleging violations of the United States Constitution. The court exercised supplemental jurisdiction over Mann's related state-law claims pursuant to 28 U.S.C. § 1367(a).

On February 2, 2026, the district court entered a Memorandum Ruling partially denying Appellants' qualified immunity defense raised in their Renewed Motion to Dismiss.[1] They timely filed a Notice of Appeal on February 25, 2026.[2]

This Court has jurisdiction under the collateral order doctrine to review the district court's partial denial of qualified immunity because qualified immunity protects officials not merely from liability, but from suit itself.[3] This Court may also exercise pendant appellate jurisdiction over the district court's refusal to dismiss Mann's related state-law claims because those claims are intertwined with the qualified-immunity issues properly before the Court, arise from the same alleged use of force, and judicial economy favors resolving the claims together.[4]

---

[1] ROA. 1396-1412.

[2] ROA. 1413-1414.

[3] *Carswell v. Camp*, 54 F.4th 307, 310 (5th Cir. 2022)(citing *Mitchell v. Forsyth*, 472 U.S. 511, 526–27 (1985)); *McKay v. LaCroix*, 117 F.4th 741, 745 (5th Cir. 2024)(citing *Mitchell*, 472 U.S. 527–30; *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).

[4] *Morin v. Caire*, 77 F.3d 116, 119 (5th Cir. 1996).

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1. Whether the district court erred in holding that Mann plausibly alleged a Fourth Amendment excessive-force violation against Bossier City Police Officers Richard Pollitt, Gregory Russell, Matthew Boyd, and Marcus Green (sometimes collectively the "Bossier City Officers") by:

   (a) overlooking her failure to plead facts showing that the officers reasonably should have perceived that the suspect, Jason Mattingly, Jr. ("Mattingly"), no longer posed an imminent threat before they resumed firing; and

   (b) isolating the alleged "second volley" of gunfire instead of evaluating the officers' split-second responses under the totality of the circumstances.

2. Whether the district court erred in partially denying qualified immunity where no factually particularized precedent clearly establishes that officers violate the Fourth Amendment by resuming deadly force against a suspect who had just led police on a dangerous pursuit and was reportedly still moving inside an overturned vehicle.

3. Whether the district court should have dismissed Mann's remaining state law claims against Appellants for failing to plead excessive force.

# STATEMENT OF THE CASE

## A. Introduction.

Qualified immunity exists to protect officers forced to make split-second decisions during dangerous, evolving encounters. This case illustrates why.

When officers attempted to apprehend a suspect wanted for domestic violence, he fled, leading multiple law enforcement agencies on a dangerous pursuit through populated areas, continued driving after spike strips deflated his tires, then crashed and flipped his vehicle. Officers then opened fire and, after an alleged pause of only "several moments," resumed firing upon reports that the suspect was still moving inside the overturned truck.

The district court correctly concluded that the officers' initial use of deadly force was objectively reasonable. But the district court denied qualified immunity for the officers' resumption of fire by committing three distinct legal errors, each independently requiring reversal.

***First***, the district court analyzed the encounter through Mattingly's perspective rather than the perspective of reasonable officers on the scene. In doing so, it accepted Mann's conclusory allegation that Mattingly had been "incapacitated" while overlooking the Amended Complaint's failure to plausibly allege that the officers knew—or reasonably should have perceived—that any threat had ended before they resumed firing.

***Second***, the court improperly segmented a single, continuous encounter into discrete "volleys" of gunfire, "hermetically seal[ing] off" the second volley from the surrounding events in contravention of the totality-of-the-circumstances analysis.[5]

***Third***, the district court defined clearly established law far too generally. No precedent clearly establishes that officers violate the Fourth Amendment by resuming deadly force against a suspect who had just led police on a dangerous pursuit and was reportedly still moving inside an overturned vehicle moments after an initial exchange of gunfire.

## B. The Incident.

Mann presented the district court with two vastly different versions of this encounter. Her Amended Complaint presents a sharply narrowed version of the encounter, stripping critical details from her prior pleading in an apparent effort to evade qualified immunity.

According to the operative pleading, the Haughton Police Department responded to a domestic violence incident involving Mattingly during the early morning hours of March 4, 2023.[6] Later that day, officers obtained an arrest warrant and attempted to initiate a traffic stop on Mattingly's vehicle.[7] Mattingly fled, leading the Haughton Police, the Bossier Parish Sheriff's Office, and the Bossier

[5] *Barnes v. Felix*, 605 U.S. 73, 80 (2025).
[6] ROA. 1030.
[7] ROA. 1030.

City Police Department on a pursuit on a state highway during 5 o'clock traffic.[8] Spike strips didn't stop Mattingly; he continued driving on deflated tires until he lost control and struck a pole, causing his truck to overturn onto its passenger side.[9]

Several officers approached the vehicle with weapons drawn. Mann alleges that a Bossier Parish deputy (not a party to this appeal) opened fire into the vehicle, "incapacitating" Mattingly.[10] The Bossier City Officers joined in the fire, allegedly "further incapacitating" him.[11] After "several moments had passed," an unnamed officer "called out" that there was movement inside the vehicle, prompting what Mann calls a "second volley" of gunfire.[12] Mattingly died at the scene.[13]

In contrast to this sanitized version of the story, Mann's original pleading painted a radically different and far more complete picture of the incident. Her "Petition (sic) for Damages" attached and repeatedly referenced the official Louisiana State Police investigative report, which detailed the escalation of the threat and ultimately cleared all responding officers of wrongdoing for Mattingly's death.[14] The report reveals critical context that the Amended Complaint deliberately omits.

---

[8] ROA. 1030.
[9] ROA. 1030.
[10] ROA. 1031.
[11] ROA. 1031.
[12] ROA. 1031.
[13] ROA. 1033.
[14] Mann manually attached the report to her *pro se* pleading, ROA. 50, which is reproduced electronically at ROA. 297–565 and ROA. 1076–1345.

The victim reported that Mattingly had "beat[en] and tried to kill her," "slammed her head against the wall," "would not let [her] leave the residence," and "continued to strike and choke her throughout the night."[15] Haughton police observed multiple injuries on the victim's head, neck, and arms.[16]

Dispatch warned officers that Mattingly was armed, dangerous, and wanted on felony warrants.[17] During the pursuit, Mattingly drove at speeds reaching at least 80 miles per hour and collided with another vehicle.[18] Officers approaching the overturned truck reported observing Mattingly pointing what appeared to be a black assault rifle at them.[19] One of the Bossier City Officers "heard a 'muffled pop' and perceived glass debris coming from the front windshield as a result of shooting from inside Mattingly's truck."[20] And after the initial volley of gunfire, an officer reported that Mattingly was "still moving," prompting additional officer fire.[21]

Searching Mattingly's vehicle after the firing ended, officers recovered a BB gun, which closely resembles an AR-style rifle, "lying against [his] right leg."[22] The

---

15 ROA. 299-300.

16 ROA. 315.

17 ROA. 300, 449, 492, 508.

18 ROA. 416, 480. Data from the event recorder indicates that Mattingly exceeded 90 miles per hour during the pursuit. ROA.370.

19 ROA. 300, 413.

20 ROA. 426.

21 ROA. 443.

22 ROA. 508.

officers didn't realize it was non-lethal until then.[23] The Louisiana State Police concluded that "[n]o criminal violations were found to have been committed by law enforcement officers as it relates to the use of deadly force."[24]

By purposefully omitting the Louisiana State Police report, the operative complaint conceals these critical details. While this Court could consider the report,[25] Appellants maintain that Mann's Amended Complaint allegations standing alone fail to plead sufficient facts to overcome qualified immunity.

## C. Proceedings Below.

Mann initiated this civil rights action in the Western District of Louisiana on March 4, 2024, the one-year anniversary of Mattingly's death.[26] Proceeding *pro se* in her original complaint, Mann asserted claims individually and on behalf of her and Mattingly's minor children, K.M. and A.M.[27] The initial pleading named dozens of defendants across multiple local governments and law enforcement agencies. With respect to Bossier City, Mann sued the municipality itself and twelve

---

[23] ROA. 508.

[24] ROA. 316.

[25] Documents that are central to or integral to a plaintiff's complaint may be considered in evaluating a motion to dismiss under Rule 12(b)(6) even if not attached to the complaint; otherwise, "a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." *Williams v. Travelers Ins. Co.*, 99 F.3d 1135 (5th Cir. 1996)(quoting *Pension Benefit Guar. Corp. v. White Consolidated Indus.*, 998 F.2d 1192, 1196 (3d Cir.1993)).

In the district court, Appellants detailed how Mann's Amended Complaint relied on the Louisiana State Police Report. (ROA. 1058-1059).

[26] ROA. 18-50.

[27] ROA. 23.

individual law enforcement officers (collectively, the "Bossier City Defendants").[28] And, as noted, Mann originally attached and heavily relied upon the official Louisiana State Police investigative report of the incident that cleared all responding officers of wrongdoing for Mattingly's death.

On July 3, 2024, the Bossier City Defendants moved to dismiss, arguing: (1) Mann lacked procedural standing to pursue individual claims because she was not married or related to Mattingly; (2) the individual officers were entitled to qualified immunity; (3) the complaint failed to state a viable *Monell* claim against the municipality; and (4) the state-law claims failed for the same reasons.[29]

Thereafter, Mann retained counsel, opposed the Bossier City Defendants' motion to dismiss, and sought leave to file an amended complaint.[30] In her motion for leave, Mann represented that the primary purpose of the amendment was merely to dismiss extraneous defendants (those who did not discharge their firearms) and to otherwise simplify her claims.[31] But the proposed amendment did much more: it also omitted the Louisiana State Police report as an attachment, along with all but one explicit reference to it. Thus, Mann intentionally excluded facts from that report bearing on the reasonableness of the officers' use of force.

---

[28] ROA. 23-35.
[29] ROA. 267-567.
[30] ROA. 573-608, 615-620, 645-705.
[31] ROA. 676.

The Bossier City Defendants opposed the motion for leave, highlighting Mann's sanitized allegations as obvious gamesmanship and asserting that the proposed revisions remained insufficient to state a claim.[32] Over that objection, the magistrate judge granted leave to amend and denied the Bossier City Defendants' original motion to dismiss as moot.[33]

**1. Amended Complaint allegations.**

Mann's First Amended Complaint for Damages describes the events following Mattingly's rollover crash thusly:

> 29. Defendant Sprankle indiscriminately opened fire on Mr. Mattingly, Jr. without giving any commands, incapacitating him.
>
> 30. Defendants Russell, Green, Pollitt, and Boyd did not see any firearms in Mr. Mattingly, Jr.'s vehicle or in his possession.
>
> 31. Nevertheless, Defendants Edmonds, Russell, Green, and Pollitt also indiscriminately opened fire on Mr. Mattingly, Jr.'s vehicle.
>
> 32. Mr. Mattingly, Jr. was further incapacitated by the volley of gunfire from Defendants Edmonds, Russell, Green, and Pollitt.
>
> 33. After several moments had passed, an officer called out that he saw movement inside Mr. Mattingly, Jr.'s vehicle.
>
> 34. Defendants Sprankle, Edmonds, Russel, Green, Pollitt, and Boyd proceeded to fire a second volley of rounds at Mr. Mattingly, Jr.
>
> […]

[32] ROA. 720-1012.
[33] ROA. 1023-1026.

> 44. Mr. Mattingly, Jr. suffered numerous wounds as a result of being shot by HPD, BPSO, and BCPD officers and deputies, which caused his death at the scene of the incident.[34]

### 2. Renewed Motion to Dismiss and ruling.

Appellants filed their Renewed Motion to Dismiss on October 8, 2024, asserting qualified immunity based on Mann's failure to plead a viable excessive-force violation and the lack of clearly established law governing these unique facts, and also seeking dismissal of the remaining state-law claims.[35] Though not attached to Mann's amended pleading, Appellants attached the Louisiana State Police report to their renewed motion and urged the district court to consider it when evaluating the renewed motion to dismiss. Mann opposed the motion, and Appellants replied.[36]

On February 2, 2026, the district court entered a Memorandum Ruling granting Appellants' motion in part and denying it in part.[37] As an initial matter, the court refused to consider the Louisiana State Police report on the ground that it was neither attached to nor "central" to Mann's Amended Complaint.[38] Next, the district court bifurcated the encounter into two distinct events: a "first" and a "second" volley of gunfire. Evaluating the first volley, the court held that the officers were entitled to qualified immunity, refusing to find that this use of force was clearly

[34] ROA. 1031-1033.
[35] ROA. 1049-1346.
[36] ROA. 1360-1395.
[37] ROA. 1396-1412.
[38] ROA. 1402.

excessive or unreasonable under all of the circumstances.[39]

Then, it pivoted. Isolating the second volley in a vacuum, devoid of the events preceding it, the district court denied qualified immunity as to that resumption of fire, concluding that Mann had plausibly alleged Mattingly was "incapacitated" and that clearly established law prohibited the further use of deadly force.[40] Last, it dismissed Mann's corresponding state law claims in part.[41] Appellants appealed.[42]

## SUMMARY OF ARGUMENT

The district court erred in denying qualified immunity as to the alleged "second volley" of gunfire. To begin, the Amended Complaint fails to plausibly allege that the officers knew—or reasonably should have perceived—that Mattingly no longer posed an immediate threat before firing resumed. Mann's allegation that Mattingly was "incapacitated," is conclusory, and the Amended Complaint contains no factual development indicating that the threat ceased, let alone that the officers could have observed such a cessation.

The district court also improperly segmented a single, unfolding encounter into isolated events. By evaluating the alleged "second volley" in a vacuum—divorced from Mattingly's felony warrants, dangerous flight, continued refusal to

[39] ROA. 1405-1407.
[40] ROA. 1407-1411.
[41] ROA. 1411-1412.
[42] ROA. 1413-1414.

surrender, rollover crash, and reported movement inside the vehicle—the district court ran afoul of the totality-of-the-circumstances inquiry.

Next, the district court defined clearly established law at an impermissibly high level of generality. No controlling precedent establishes that officers violate the Fourth Amendment by resuming deadly force against an unsecured suspect who has just led police on a dangerous pursuit and is reportedly still moving inside an overturned vehicle moments after an initial deployment of force. Finally, because this Court should exercise pendent appellate jurisdiction to dismiss her derivative state-law claims.

## ARGUMENT

### A. Standard of Review.

This Court reviews *de novo* the denial of a motion to dismiss based on qualified immunity.[43] "[N]o form of appellate deference is acceptable"[44] under the *de novo* standard.

Once raised, the plaintiff bears the burden of pleading facts to defeat qualified immunity by showing that (1) the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.[45]

---

[43] *See Edmiston v. Borrego*, 75 F.4th 551, 557 (5th Cir. 2023)(quoting *Benfield v. Magee*, 945 F.3d 333, 336 (5th Cir. 2019)).
[44] *Scarborough v. Clemco Indus.*, 391 F.3d 660, 663 (5th Cir. 2004)(quoting *Salve Regina College v. Russell,* 499 U.S. 225, 238 (1991)).
[45] *See Doe v. Ferguson*, 128 F.4th 727, 734 (5th Cir. 2025)(quotations and citations omitted).

The *Twombly/Iqbal* standard applies: "a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity."[46]

## B. Mann Didn't Plead Objectively Unreasonable Force.

This Court may address either or both prongs of qualified immunity.[47] Appellants address both, beginning with the rights violation prong.

### 1. First *Graham* factor: Mattingly's crimes were serious.

To state a plausible Fourth Amendment excessive-force claim, Mann must allege three elements: (1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable.[48] The second and third elements "collapse into a single objective-reasonableness inquiry"[49] which turns on the *Graham* factors: the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether the suspect was actively resisting arrest or attempting to evade arrest by flight.[50]

---

[46] *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).
[47] *See LaVergne v. Stutes*, 82 F.4th 433, 436 (5th Cir. 2023)(citing *Pearson*, 555 U.S. at 242).
[48] *See Rucker v. Marshall*, 119 F.4th 395, 403 (5th Cir. 2024)(quotations omitted).
[49] *Pena v. City of Rio Grande City*, 879 F.3d 613, 619 (5th Cir. 2018).
[50] *See Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009)(quoting *Graham v. Connor,* 490 U.S. 386, 396 (1989)).

Crucially, the reasonableness of a particular use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."[51] Because "[t]o be reasonable is not to be perfect," the Fourth Amendment "allows for some mistakes on the part of government officials, giving them fair leeway for enforcing the law in the community's protection."[52]

The first *Graham* factor—the severity of the crime—weighs heavily in the officers' favor, and Mann has never argued otherwise. Officers were attempting to execute a warrant issued earlier that day charging Mattingly with a domestic incident, an inherently violent and serious offense.[53] Mattingly then escalated the danger dramatically by refusing to surrender and leading multiple law enforcement agencies on a prolonged pursuit through populated areas—itself a grave and dangerous offense threatening both officers and the public.[54]

**2. Second and third *Graham* factors: The complaint never plausibly alleges that officers perceived the threat had ended.**

Mann centered her argument below on the second and third *Graham* factors, contending that the allegation that Mattingly had become "incapacitated" after the initial volley of gunfire necessarily meant he no longer posed a threat or continued

[51] *Bailey v. Ramos*, 125 F.4th 667, 680 (5th Cir. 2025)(quoting *Graham,* 490 U.S. 386 at 396).
[52] *Id.* (quotations and citations omitted).
[53] *See* La. Rev. Stat. 14:35.3.
[54] *See Salazar v. Molina*, 37 F.4th 278, 281–82 (5th Cir. 2022)(agreeing that "leading law enforcement in a high-speed chase through a heavily populated area is a serious crime that puts at risk not only the lives of Plaintiff and the officers but also those of the general public.").

to resist. The district court erred by accepting this conclusory allegation as true before finding the officers' resumption of fire unreasonably excessive, for two independent reasons.

**a. "Incapacitated" is a conclusory label.**

The district court's partial denial of qualified immunity for the alleged "second volley" of shots failed to account for a foundational pleading defect: the Amended Complaint does not establish that Mattingly was rendered "incapacitated" by the "first volley," let alone that the officers knew—or reasonably could have known—that Mattingly was not a threat before they resumed firing.

The Amended Complaint alleges only that the initial volley of gunfire "incapacitated" Mattingly—a raw legal conclusion unsupported by any specific factual allegations concerning his injuries, consciousness, or physical inability to continue posing a threat. Mann does not explicitly allege that any rounds from the first volley actually struck Mattingly, nor does she disclose how many hit him.[55] The district court sidestepped Appellants' objection to this threadbare allegation:

> Defendants counter that any assertion that Mattingly was incapacitated is speculative. . . . But the pertinent question is whether a reasonable officer would resume firing at a person after several moments have passed, having already discharged the first volley of gunfire into that person's vehicle.[56]

[55] The Amended Complaint alleges that approximately "80 rounds" were fired "at" Mattingly. ROA. 1033. However, Mann fails to delineate how many rounds were attributable to each distinct "volley," or how many shots actually struck Mattingly.

[56] ROA. 1407.

That's error.[57] Mann's failure to plausibly plead that Mattingly no longer posed a threat or had ceased resisting after the initial volley is a threshold pleading defect that required dismissal.

#### b. Nothing signaled to officers that the danger had passed.

It is a bedrock principle of Fourth Amendment law that "officers need not stop shooting until the threat has ended."[58] Thus, the dispositive question is whether a reasonable officer confronting this unfolding situation *in real time* would have understood that the threat posed by Mattingly had subsided.[59] Courts must "consider only the facts that were knowable to the defendant officers at the time," taking care to avoid "second-guessing a police officer's assessment, made on the scene, of the danger presented by a particular situation."[60]

The Amended Complaint is entirely silent on what the Bossier City officers actually perceived or reasonably should have perceived before they resumed firing. The conclusory "incapacitated" allegation omits any observable physical markers that would have signaled to these officers that Mattingly no longer posed an

---

[57] *See, e.g., Harmon v. City of Arlington, Texas*, 16 F.4th 1159, 1164, n. 2 (5th Cir. 2021)(rejecting as conclusory allegation that officers were "never exposed to any risk of harm or injury"). Mann's allegation that the Bossier City Officers did not see a firearm is similarly speculative and conclusory.

[58] *Plumhoff v. Rickard*, 572 U.S. 765, 777 (2014).

[59] *See Graham*, 490 U.S. at 396–97.

[60] *Garza v. Briones*, 943 F.3d 740, 745 (5th Cir. 2019)(quotations omitted).

imminent danger.[61] Similarly absent are any facts indicating that Mattingly—after fleeing multiple agencies, driving on deflated tires, and flipping his truck—made any perceivable attempt to surrender.[62] Nothing in the Amended Complaint suggests that the threat environment materially changed during the 'several moments' between volleys.

If anything, the pleaded facts point in the opposite direction.[63] Mann alleges that immediately before officers resumed firing, an officer reported seeing movement inside the overturned vehicle. That allegation reinforces—not undermines—the objective reasonableness of the officers' perception that an active threat remained.[64]

While the district court correctly applied *Graham* to the initial volley, it went astray by isolating the alleged "second volley" in a vacuum. The court focused

---

[61] The Amended Complaint notes that a Bossier Parish Sheriff's deputy (who is not a party to this appeal) observed Mattingly "gesturing frantically for help with his right hand raised" and did not see a weapon. ROA. 1031. Crucially, the complaint nowhere alleges that these observations were ever communicated to the Bossier City Officers, or that they made similar observations themselves.

[62] Whether Mattingly was actually armed is irrelevant. The sole inquiry is whether the officers reasonably perceived an imminent threat of serious physical harm based on the information they possessed at the moment force was deployed. *See, e.g.*, *Reese v. Anderson*, 926 F.2d 494, 501 (5th Cir. 1991).

[63] ROA. 1031.

[64] *See, e.g., Garza*, 943 F.3d at 745 (officers were objectively reasonable in using deadly force against a suspect brandishing a BB gun because the facts suggest that the officers thought they were confronting an unpredictable man armed with a dangerous weapon); *Hudspeth v. City of Shreveport*, 270 F. App'x 332, 337 (5th Cir. 2008)(finding officers' use of deadly force was objectively reasonable when they shot and killed a person holding a cell phone after a high-speed pursuit).

myopically on the word "incapacitated" without considering whether the responding officers observed, or had any reason to know of, such an incapacity. Even if Mattingly ultimately proved incapable of harming the officers, that "is not the test"; the question is whether the Bossier City Officers were "objectively reasonable in believing [Mattingly] posed a threat of serious harm" before resuming fire.[65] The Amended Complaint itself answers that question affirmatively.

The court's reliance on authority holding force excessive where a suspect was "clearly incapacitated" or had "clearly given himself up" is misplaced; Mann alleges absolutely no facts suggesting either circumstance was present here. Because the Amended Complaint fails to plausibly allege that the officers knew or should have perceived that the threat had ended, the excessive-force claims should have been dismissed.

### 3. The failure-to-intervene claim fails without excessive force.

Mann's failure-to-intervene claims fail for the same reasons as her excessive-force claims. Such claims require an underlying constitutional violation.[66] As explained above, the Amended Complaint fails to plausibly allege that the officers violated the Fourth Amendment by resuming fire during this evolving encounter.

[65] *Manis v. Lawson*, 585 F.3d 839, 845 (5th Cir. 2009).

[66] *See, e.g., Davis v. Cannon*, 91 F. App'x 327, 329 (5th Cir. 2004)("As Steele's actions did not constitute excessive force, Reed and Campbell are not liable for failing to intervene and protect Davis.").

Thus, the district court should have dismissed the failure-to-intervene claims upon finding Mann's failure to plead excessive force.

## C. <u>**The District Court Improperly "Bifurcated" a Single, Continuous Encounter**</u>**.**

The district court also erred by isolating the alleged "second volley" from the broader encounter. "The operative question in excessive force cases is "whether the totality of the circumstances justifies a particular . . . seizure."[67] Last year, in *Barnes v. Felix*, the Court unanimously rejected this Court's historical "moment-of-threat" doctrine, under which panels in deadly force cases "ask[ed] only about the situation existing *'at the moment of the threat'* that sparked the fatal shooting."[68] It held that such a restrictive framework conflicts with Fourth Amendment precedent:

> Most notable here, the "totality of the circumstances" inquiry into a use of force has no time limit. Of course, the situation at the precise time of the shooting will often be what matters most; it is, after all, the officer's choice in that moment that is under review. But earlier facts and circumstances may bear on how a reasonable officer would have understood and responded to later ones. Or as the Federal Government puts the point, those later, "in-the-moment" facts "cannot be hermetically sealed off from the context in which they arose." [. . .] As we have explained, a court cannot thus "narrow" the totality-of-the-circumstances inquiry, to focus on only a single moment. It must look too, in this and all excessive-force cases, at any relevant events coming before.[69]

---

[67] *County of Los Angeles, Calif. v. Mendez*, 581 U.S. 420, 427–28 (2017)(quotation omitted).

[68] 605 U.S. at 78 (emphasis in original). Mann relied on the now-reversed 'moment of threat' doctrine in opposing Appellants' renewed motion to dismiss. ROA. 1374.

[69] *Id.* at 80–81, 83. *Barnes* did not announce a new rule, but reaffirmed the totality of circumstances analysis. Even if *Barnes* established a new rule, the district court was bound to apply it. *See, e.g., Harper v. Virginia Dep't of Tax'n*, 509 U.S. 86, 90, (1993)("this Court's application of a rule of

Yet, that narrowing is exactly what the district court did here. In its own words, it "bifurcated" the encounter, then asked solely "whether—assuming the Plaintiff's well-pleaded facts as true—Mattingly posed a threat to officers or others after officers surrounded Mattingly, fired the first volley of gunfire at Mattingly, and allowed several moments to pass before firing another volley."[70]

That formulation captures only a fraction of the constitutional equation. It "hermetically sealed off"[71] the second volley from the context in which it arose: the warrant, the pursuit, the spike-strip deployment, the collision, the rollover crash, and an officer's live report of movement inside the overturned vehicle just before fire resumed. "The 'totality of the circumstances' inquiry has no time limit."[72] The Fourth Amendment does not impose a stopwatch-based rule requiring officers to reassess threats with perfect precision in the middle of evolving confrontations. Nor does it require officers to assume that a violent suspect—who had done nothing to comply or surrender throughout the encounter—suddenly ceased posing a threat.

This Court has never imposed a rigid temporal limit on officers resuming deadly force. But, following *Barnes*, it has continued applying the principle that "an

---

federal law to the parties before the Court requires every court to give retroactive effect to that decision.").

[70] ROA. 1407.

[71] *Barnes*, 605 U.S. at 80.

[72] *Id.*

exercise of force that is reasonable at one moment can become unreasonable in the next if the justification for the use of force has ceased."[73] Harmonizing that principle together with the dictates of *Barnes*, the question in multi-volley cases is whether the threat environment shifted and officers had "sufficient time to perceive that any threat to [them] had passed by the time [they] fired" additional shots.[74]

That explains the result in *Baker v. Coborn*. There, an officer acted objectively reasonably when he initially fired at a suspect driving toward him, but unreasonably when the officer fired again *after* the suspect had completely passed the officer and was driving away.[75] The threat ended when the suspect's vehicle completely passed the officer and began driving away.

By contrast, the Amended Complaint here alleges no comparable change in circumstances between volleys. Nothing alleged suggests that Mattingly surrendered, became visibly incapacitated, or otherwise ceased posing a threat. The Bossier City officers did not fire at a retreating suspect fleeing the scene; they confronted a violent felony suspect reportedly still moving inside an overturned vehicle moments after a dangerous pursuit and rollover crash. By isolating the resumption of fire from the broader encounter that preceded it, the district court

---

[73] *Baker v. Coborn*, 170 F.4th 988, 994, n. 6 (5th Cir. 2026)(citing *Lytle v. Bexar County,* 560 F.3d 404, 413 (5th Cir. 2009)).
[74] *Id.*
[75] *Baker v. Coborn*, 68 F.4th 240, 250 (5th Cir. 2023), *as revised* (May 19, 2023).

improperly replaced a totality-of-the-circumstances analysis with a segmented, hindsight-driven inquiry.

### D. No Clearly Established Law Prohibited the Bossier City Officers' Conduct.

A constitutional right is "clearly established" only when its contours are "sufficiently clear that every reasonable official would have understood that what he is doing violates that right" at the time the challenged conduct occurred.[76] Accordingly, immunity must be recognized unless "existing precedent . . . placed the statutory or constitutional question beyond debate."[77] To meet this burden, Mann was required to point to controlling authority, or a robust consensus of persuasive authority, that defines the contours of the right with a high degree of particularity.[78] Put simply, she must identify "an on-point case."[79]

The district court violated these principles. It failed to identify a single precedent that clearly established the law such that every reasonable officer would "immediately" recognize that resuming their fire would be unconstitutional here.[80]

---

[76] *Ashcroft v. al-Kidd,* 563 U.S. 731, 741 (2011)(emphasis added, internal quotations omitted).
[77] *Id.*
[78] *Morgan v. Swanson,* 659 F.3d 359, 371–72 (5th Cir. 2011) (en banc) (quoting *Ashcroft*, 563 U.S. at 742).
[79] *Henderson v. Harris Cnty., Texas*, 51 F.4th 125, 132 (5th Cir. 2022).
[80] *Morrow v. Meachum*, 917 F.3d 870, 876 (5th Cir. 2019).

### 1. *Roque v. Harvel* is materially distinguishable.

*Roque*,[81] which the district court was "persuaded to rely on,"[82] is not that on-point case. It involved materially different facts. There, officers shot a suicidal suspect, causing him to "double over, drop the gun, and stumble from the sidewalk toward the street" away from the officers.[83] Crucially, video showed the suspect's gun falling to "the white sidewalk in broad daylight" and the suspect "stumbling into the street" before the officer fired again, killing the suspect.[84] Under those facts, this Court applied previously established law that prohibited shooting an unarmed, incapacitated suspect who was "*moving away*" from everyone present at the scene.[85]

Unlike the suspect in *Roque*, Mattingly was not moving away from officers before they resumed fire; he remained inside the vehicle. And Mann alleges no facts concerning what the officers could observe about Mattingly's condition or ability to continue posing a threat after the initial volley of gunfire. To the contrary, the Amended Complaint alleges that another officer reported movement inside the vehicle immediately before fire resumed—a fact that undermines, rather than supports, her assertion that the threat had ended. *Roque* is both too factually distinct and too generalized in its articulation of the law prohibiting force against

---

[81] 993 F.3d 325 (5th Cir. 2021).
[82] ROA. 1410.
[83] 993 F.3d at 330.
[84] *Id.*
[85] *Id.* at 339 (emphasis added).

incapacitated suspects to provide officers clear guidance under the circumstances confronting them here. The district court was wrong to rely on it.

### 2. *Zorn v. Linton* and *Estevis v. Cantu* confirm the error below.

The Supreme Court's reaffirmation in *Zorn* that the second prong of qualified immunity requires a "high degree of specificity" in clearly established law, crystallizes the flaw in the district court's clearly established law analysis below.[86] There, the Second Circuit denied qualified immunity to a state trooper who used a rear wristlock to remove a non-compliant protester from a sit-in, relying on precedent holding that the "gratuitous" use of a wristlock against a passive protester constitutes excessive force.[87] The Supreme Court reversed, concluding that no prior precedent "obviously resolved" the issue, and dismissed the lower court's reliance on generalized "gratuitous" force rules because it failed to specify which exact circumstances make a use of force "gratuitous."[88]

The district court committed precisely this error below. Its, clearly established law holding rests on the general proposition that "shooting an incapacitated suspect…is obviously unconstitutional." But that provides no guidance to an officer in the field confronting a violent felony suspect reportedly still moving inside an overturned vehicle. And it is much too detached from the specific facts that would

[86] 607 U.S.___, 146 S. Ct. 926, 930 (2026).
[87] *Id.* at 930 (citation omitted).
[88] *Id.* at 931.

make it applicable here. Just as in *Zorn*, the Bossier City Officers are entitled to qualified immunity because the lower court "failed to identify a case where an officer taking similar actions in similar circumstances 'was held to have violated' the Constitution."[89]

And this Court's recent decision in *Estevis v. Cantu* underscores the point in the context of multi-shot encounters.[90] There, officers fired nine times upon a fleeing suspect over the course of ten seconds. Reading *Lytle*[91] "for the proposition that officers cannot shoot at a suspect who has 'driven away from them' if the officers have 'enough time' to realize the fleeing car was no longer a threat," the district court in *Estevis* granted qualified immunity for shots one through three, but denied it for shots four through nine.[92] This Court reversed, holding that the district court read *Lytle* "too generally."[93] That's because *Lytle* governed a suspect who had "driven away," *Estevis*, whereas the suspect "lurched forward over the curb and into a fence."[94] The cases were "alike only in the most abstract sense."[95] The same applies here. Whereas *Roque* involved a suspect who dropped his weapon and moved away from officers, Mattingly was not moving away but was unrestrained in the cabin of

---

[89] *Id.*
[90] 134 F.4th 793 (5th Cir. 2025)
[91] 560 F.3d 404.
[92] 134 F.4th at 798.
[93] *Id.*
[94] *Id.*
[95] *Id.* at 797–98.

his vehicle, inside of which observable movement was reported. This case and *Roque* are not abstractly, let alone squarely, alike.

In the final analysis, Mann bore the heavy burden of negating qualified immunity by demonstrating that the Bossier City Officers' resumption of fire violated clearly established law.[96] She did not. So, the Bossier City Officers are entitled to qualified immunity.

### E. **<u>This Court Should Exercise Pendant Appellate Jurisdiction to Dismiss Mann's State-Law Claims</u>.**

In an interlocutory qualified immunity appeal, this Court may "exercise its discretion to consider under pendant appellate jurisdiction claims that are closely related to the issue properly before [it]" in the interest of judicial economy.[97] Refusing pendant jurisdiction over related state-law claims "would defeat the principal purpose of allowing an appeal of immunity issues before a government employee is forced to go to trial" or submit to burdensome discovery.[98] Just weeks ago, this Court exercised pendant jurisdiction to dismiss a plaintiff's Louisiana law negligence, assault, battery, and vicarious liability claims under nearly identical circumstances.[99] Judicial economy heavily favors exercising pendant appellate jurisdiction here because Mann's state-law assault and battery claims are intertwined

---

[96] *Id.* at 798 (citing *King v. Handorf*, 821 F.3d 650, 653 (5th Cir. 2016)).
[97] *Morin*, 77 F.3d at 119.
[98] *Id.* at 119-20.
[99] *See Carter v. Dupuy*, 173 F.4th 561, 566 (5th Cir. 2026).

with the qualified-immunity issues properly before this Court.

Although pendant appellate jurisdiction is exercised cautiously, this case presents the precise circumstance for which the doctrine was designed: where the resolution of a qualified-immunity appeal necessarily disposes of redundant state-law claims arising from the same operative facts. Pendant appellate jurisdiction spares the parties and the district court from a second round of litigation over claims that are entirely derivative of the federal issue now before this Court. As in *Carter*, this Court should exercise its discretion to dismiss Mann's related state-law claims now.

Mann's assault and battery state law claims "mirror[] [their] federal constitutional counterpart."[100] Below, Mann conceded—and the district court agreed—that these claims rise or fall on the existence of an underlying constitutional violation arising from the same alleged use of force. If this Court concludes, as it should, that the Bossier City officers did not employ constitutionally excessive force during the resumption of fire, then Mann's state-law tort claims necessarily fail as a matter of law. Without a viable tort claim, there is no basis for imposing vicarious liability upon Chief Haugen.[101]

---

[100] *Deville*, 567 F.3d at 172.

[101] *See, e.g., Mathieu v. Imperial Toy Corp.*, 94-0952 (La. 11/30/94), 646 So. 2d 318.

## **CONCLUSION**

The district court correctly concluded that the officers' initial use of deadly force was objectively reasonable. It erred, however, by denying qualified immunity for the alleged "second volley" based on hindsight assumptions, segmented analysis, and generalized clearly established law untethered to materially similar facts.

Appellants respectfully request that this Court reverse the district court's partial denial of qualified immunity, render judgment dismissing Mann's federal claims against Appellants with prejudice, and exercise pendant appellate jurisdiction to dismiss Mann's related state-law claims.

Respectfully submitted,

WIENER, WEISS & MADISON, APC

By: s/ *Reid A. Jones*
Layne A. Clark, Jr. LA Bar No. 23686
Reid A. Jones, LA Bar No. 34611
330 Marshall Street, Suite 1000 (71101)
P.O. Box 21990
Shreveport, LA 71120-1990
Telephone: (318) 226-9100
Fax: (318) 424-5128
Email: lclark@wwmlaw.com
Email: rjones@wwmlaw.com

Attorneys for Appellants, Daniel Haugen, Richard Pollitt, Gregory Russell, Matthew Boyd, and Marcus Green

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Brief of Appellants has been served upon all counsel of record, said service having been accomplished electronically by filing in the Court's CM/ECF system on this 2nd day of June, 2026.

/s/ *Reid A. Jones*
Reid A. Jones

## CERTIFICATE OF COMPLIANCE WITH FED. R. APP. 32(a)

I certify that this brief complies with the type-volume limitations of Fed. R. App. 32(a)(7)(B) because this brief contains 7,345 words, excluding the parts of the brief exempted by Fed. R. App. 32(f) and 5th Cir. R. 32.2. I further certify that this brief complies with the typeface requirements of Fed. R. App. 32(a)(5) and the type style requirements of Fed. R. App. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word (Office 365) in 14-point Times New Roman font, excluding footnotes, which are printed in 12-point Times New Roman font.

/s/ *Reid A. Jones*
Reid A. Jones